IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NLM CAPITAL PARTNERS, L.P., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | No. 3:08-CV-2033-P |
| MOBICOM CORPORATION and | § | |
| WILLIAM E. GIBSON, | § | |
| | § | |
| Defendant. | § | |

## **ORDER**

Now before the Court is a Motion for Summary Judgment filed by Plaintiff NLM Capital

Partners, L.P. ("NLM"), on February 4, 2009. Defendants Mobicom Corporation ("Mobicom") and

William E. Gibson ("Gibson") filed a Response on March 11, 2009. Plaintiff filed its Reply on

March 26, 2009. Also before the Court is a Motion to Strike Plaintiff's Summary Judgment

Evidence and Brief in Support filed by Defendants on March 11, 2009. A Response to the Motion

to Strike was filed by Plaintiff on March 26, 2009. Defendant filed its Reply on April 10, 2009.

Also before the Court is a Motion for Leave to File Supplemental Appendix filed by Plaintiff on

March 26, 2009. A Response to the Motion for Leave was filed by Defendants on April 15, 2009.

Plaintiff filed its Reply on May 7, 2009. Also before the Court is a Motion to Strike Portions of the

Declaration of William E. Gibson filed by Plaintiff on March 26, 2009. A Response to the Motion

to Strike was filed by Defendants on April 15, 2009. Plaintiff filed its Reply on May 6, 2009.

After reviewing the parties' briefing, the evidence, and the applicable law, the Court GRANTS Plaintiff's Motion for Summary Judgment. Plaintiff's Motion for Leave is GRANTED. Defendants' Motion to Strike is DENIED as MOOT. Plaintiff's Motion to Strike is DENIED as MOOT.

## I.    Background

NLM Capital Partners, L.P. ("NLM") is an investment business which focuses on investing in select middle market private opportunities. (Defs.' Resp. Mot. Summ. J. Ex. A (p. 1) (William E. Gibson Decl. ¶ 4).) James Randall "Randy" Chappel ("Chappel") is the President of NLM. (*Id*.) Mobicom Corporation ("Mobicom") designs and markets cellular telephones. (*Id*. ¶ 2) William E. Gibson ("Gibson") is the President and Chief Executive Officer of Mobicom. (*Id*.) In the summer of 2006, Chappel and Gibson began discussions regarding potential funding for Mobicom to be supplied by NLM. (Mot. Summ. J. Supplemental App. Ex A (p. 1) (James Randall Chappel Supplemental Decl. ¶ 2).)[1] In August of 2006, NLM agreed to lend to Mobicom, and, accordingly, on or around August 15, 2006, Mobicom executed a Convertible Promissory Note (the "Note") promising to pay NLM two million five hundred thousand dollars, plus interest as specified in the Note. (*Id*. ¶ 5.) The Note required that Mobicom pay the entire principal amount, plus interest as provided for in the note, on or before August 15, 2008. (*Id*.)

During the investment negotiations, Gibson agreed to a request by Chappel that Gibson personally guarantee NLM's investment in Mobicom. (Defs.' Resp. Mot. Summ. J. Ex. A (p. 2)

---

[1] Defendants objected to the original declaration of Randy Chappel, arguing that the declaration is not properly authenticated. However, Plaintiff addresses this objection by filing a Supplemental Appendix to its Motion for Summary Judgment.

(William E. Gibson Decl. ¶ 7).)  Accordingly, contemporaneously with Mobicom executing the Note, Gibson executed a guaranty that guaranteed payment of Mobicom's obligations under the Note (the "Guarantee").  (Mot. Summ. J. Supplemental App. Ex A (p. 2) (James Randall Chappel Supplemental Decl. ¶ 7).)

Despite demands for payment by NLM, NLM alleges that  Mobicom has not paid as agreed under the note.  (*Id* . ¶ 5.)  NLM alleges that this failure to pay constitutes a default on the Note, and on August 21, 2008, NLM made demand upon Gibson under the Guaranty.  (*Id*. ¶ 9.)  Gibson, likewise, has failed to pay the amounts outstanding.  (*Id*.)

NLM, Mobicom and Gibson then engaged in discussions regarding Mobicom's and Gibson's respective plans to make good on their contractual obligations.  (*Id*. ¶ 10.) These discussions culminated in the parties entering into a tri-partite letter agreement, wherein NLM agreed to forbear taking action to enforce the Note and Guaranty until January 1, 2009, provided that Mobicom and Gibson satisfied certain conditions (the "Forbearance Agreement").  (*Id*.)  NLM alleges that Gibson and Mobicom have breached the Forbearance Agreement in several material respects.  (*Id*. ¶ 15.)

Plaintiff filed suit against Defendants on November 13, 2008. Plaintiff's complaint is seeking recovery for the amounts due under the Note, the Guaranty and the Forbearance Agreement under claims of breach of contract and fraud or alternatively, a declaratory judgment claim.

## II.    Summary Judgment Legal Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of informing the district court of the basis for its belief that there is an absence of a genuine issue for trial and of identifying those portions of the record that demonstrate such absence.  *See Celotex*, 477 U.S. at 323.  However, all evidence and reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion.  *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue.  Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).  The party defending against the motion for summary judgment cannot defeat the motion unless he provides specific facts demonstrating a genuine issue of material fact, such that a reasonable jury might return a verdict in his favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  Mere assertions of a factual dispute unsupported by probative evidence will not prevent a summary judgment.  *See id.* at 249–50.  In other words, conclusory statements, speculation, and unsubstantiated assertions will not suffice to defeat a motion for summary judgment.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc); *see also Abbott v. Equity Group, Inc.*, 2 F.3d 613, 619 (5th Cir. 1993) ("[U]nsubstantiated assertions are not competent summary judgment evidence." (citing *Celotex*, 477 U.S. at 324)).  Further, a court has no duty to search the record for evidence of genuine issues.  *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

### III.    Analysis

NLM asserts that it is entitled to amounts due under the Note, the Guaranty and the

Forbearance Agreement.  (Pl.'s Br. Supp. Mot. Summ. J. (p. 2) The validity of the claims against

the Defendants under each of these documents are addressed in turn.

### A.    The Note

Under Texas law, to collect on a promissory note as a matter of law, the holder or payee

need only establish that (1) there is a note; (2) he is the legal owner and holder of the note; (3) the

defendant is the maker of the note; and (4) a certain balance is due and owing on the note.

*Blankenship v. Robins*, 899 S.W.2d 236, 238 (Tex. App–Houston [14th Dist.] 1994, no pet.).

To establish the existence of the note the holder need only provide "[a] photocopy of the

promissory note, attached to an affidavit in which the affiant swears that the photocopy is a true

and correct copy of the original note . . . ." *Id*.  NLM has provided the court with a copy of the

Note (Mot. Summ. J. Supplemental App. Ex A-3) and Chappel has sworn that the photocopy is a

true and correct copy of the original (Mot. Summ. J. Supplemental App. Ex A (p. 2) (James

Randall Chappel Supplemental Decl. ¶ 5)).

To establish ownership of the note the holder, in addition to the requirements above, must

also attest that he is the owner of the note, the note must show on its face that it was issued to

him, and there must be no summary judgment proof showing that the note has ever been pledged,

assigned, transferred, or conveyed. *Blankenship*, 899 S.W.2d at 238;  *Zarges v. Bevan*, 652

S.W.2d 368, 369 (Tex. 1983).  Chappel has sworn that NLM is the owner of the Note, (Mot.

Summ. J. Supplemental App. Ex A (p. 2) (James Randall Chappel Supplemental Decl. ¶ 5)) the Note shows on its face that it was issued to NLM, (Mot. Summ. J. Supplemental App. Ex A-3) and there is no evidence that the Note has ever been pledged.

As Defendants have never denied the genuineness of Gibson's signature on the Note, Mobicom is established as the maker. *Blankenship*, 899 S.W.2d at 238 ("When the defendant does not deny the genuineness of his signature on the note, he is established as the maker); *Groschke v. Gabriel*, 824 S.W.2d 607, 610 (Tex. App.–Houston [14th Dist.] 1991, writ denied). Additionally, Chappel's sworn statement regarding Mobicom's default under the Note is sufficient summary judgment evidence to prove that a certain balance is due an owing on the Note. *Blankenship*, 899 S.W.2d at 238. Accordingly, Plaintiff has sustained its burden to prove these elements, and is entitled to recover under the Note, unless the maker establishes a defense.

### B.    The Guaranty

In order to recover on its suit on the Guaranty, NLM must show proof of (1) the existence and ownership of the guaranty contract, (2) the performance of the terms of the underlying contract by the holder, (3) the occurrence of the conditions upon which liability is based, and (4) the failure or refusal to perform the promise by the guarantor. *Wiman v. Tomaszewicz*, 877 S.W.2d 1, 8 (Tex. App.–Dallas 1994).

As with the Note, the existence and ownership of a guaranty may be proved by providing a sworn statement and a copy of the guaranty. *Barclay v. Waxahachie Bank & Trust Co.*, 568 S.W.2d 721, 723 (Tex. Civ. App.–Waco 1978, no writ). Chappel has sworn that NLM is the owner of the Guaranty, (Mot. Summ. J. Supplemental App. Ex A (p. 2) (James Randall Chappel

Supplemental Decl. ¶ 7)) and NLM has provided a copy of the Guaranty (Mot. Summ. J.

Supplemental App. Ex A-4).  As noted above, absent a defense from Mobicom, NLM has proven

a default on the Note. This default is the basis for Gibson's liability under the Guaranty. NLM's

demand for payment under the Guaranty and Gibson's failure to pay are established through

Chappel's affidavit.  (Mot. Summ. J. Supplemental App. Ex A (p. 2) (James Randall Chappel

Supplemental Decl. ¶ 9).)  Accordingly, absent a defense from Gibson, NLM has proven a

default on the Guaranty.

###　　　C.　　　The Forbearance Agreement

The elements of a breach of contract claim are (1) the existence of a valid contract; (2)

performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant;

(4) damages sustained as a result of the breach.  *Winchek v. American Express Travel Related*

*Services Co.*, 232 S.W.3d 197, 202 (Tex. App.–Houston [1st Dist.] 2007).

NLM's submission of a copy of the executed Forbearance Agreement (Mot. Summ. J.

Supplemental App. Ex A-12) proves a meeting of the minds and the existence of a valid contract.

Under the terms of the Forbearance Agreement, executed on or around September 8, 2008,

Mobicom and Gibson acknowledge that they are in default under the terms of the Note and the

Guaranty, respectively  (*Id*. p.64).  In acknowledging this default, and in consideration for NLM

agreeing to not file suit regarding this default until January 1, 2009, Gibson agreed to provide

Plaintiff with updated financial information and agreed to perfect a first lien security interest in

the property known as Hamakua 139 acres ("Hamakua Property").  (Mot. Summ. J.

Supplemental App. Ex A-12 (App. 64-66).)   Chappel's sworn statement claims that Defendants'

defaulted under the Forbearance Agreement by not providing Plaintiff with the updated

information or the lien (Mot. Summ. J. Supplemental App. Ex A (p. 2) (James Randall Chappel

Supplemental Decl. ¶ 14, 15).)

     Defendants contend that they have not breached the Forbearance Agreement.  First, they

argue that Forbearance Agreement required Plaintiff to forebear from filing a lawsuit against

them until January 1, 2009, and that in bringing this claim, Plaintiff materially breached the

agreement, thereby precluding its own breach of contract claims.  (Defs.' Br. Supp. Resp. Mot.

Summ. J. (p. 21).)  Plaintiff counters that Defendants breached the agreement first by not

providing updated financial information, and by not providing a lien on the Hamakua Property.[2]

### 1.   Failure to provide a lien on the Hamakua Property

     In the Forbearance Agreement, Gibson pledged to grant to NLM a first lien perfected

security interest in the Hamakua Property.     (Mot. Summ. J. Supplemental App. Ex A-12 (App.

65).)  This obligation included "executing any documents and providing any information

regarding the property that NLM deems necessary in its sole discretion." (*Id*.)  Gibson concedes

that Plaintiff provided a mortgage document for him to sign, but argues that as a mortgage

conveys ownership to a lender, rather than merely an interest in the property, it was the improper

instrument to execute the lien that was contemplated by the Forbearance Agreement.   (Defs.'

Br. Supp. Resp. Mot. Summ. J. (p. 21).)  Accordingly, Gibson argues that his failure to execute

this document was not a breach of the Forbearance Agreement.   (*Id*.)

---

[2]Plaintiff also claims that Defendants breached the Forbearance Agreement by failing to make required interests payments.  However, as Plaintiff admits in its Reply that a fact question probably exists in relation to this default claim,  (Pl. Reply (p. 12)) the Court will not consider this claim at the Summary Judgment stage.

However, "Hawai'I law is based on the lien theory of mortgages." *Fed. Home Loan Mortgage Corp. v. Transamerica Ins. Co.*, 969 P.2d 1275, 1282 (Haw. 1998) (*see also* HAW. REV. STAT. § 506-1 (1993) ("Every transfer of an interest in real property or fixtures made as security for the performance of another act or subject to defeasance upon the payment of an obligation, whether the transfer is made in trust or otherwise, is to be deemed a mortgage and shall create a lien only as security for the obligation and shall not be deemed to pass title.").) Under the lien theory of mortgages, "[e]xecution of the mortgage does not convey to the mortgagee title that is defeasible on payment of the secured debt, but rather confers on the mortgagee a lien on the property that secures the debt." *Fed. Home Loan Mortgage Corp.* 969 P.2d at 1282.

Accordingly, the mortgage document provide by Plaintiff to Gibson was the proper document needed to place a lien on the Hamakua Property. Gibsons's failure to execute the mortgage is, therefore, a default under the terms of the Forbearance Agreement.

2.   Failure to provide updated financial information

In the Forbearance Agreement, Gibson also promised to "provide updated personal financial statements, including a balance sheet with detailed property descriptions and specific ownership information."   (Mot. Summ. J. Supplemental App. Ex A-12 (App. 65).)  Gibson failed to provide any additional information but argues the Forbearance Agreement did not require him to *create* updated financial statements, and that as no updated financial statements existed between September and November 2008, there was nothing for him to deliver to

Plaintiffs.     (Defs.' Br. Supp. Resp. Mot. Summ. J. (p. 24-25).)  The Court believes that Gibson is mis-characterizing his obligations under the Forbearance Agreement.

While Gibson may be correct in claiming that no new financial statements existed at that time, the Forbearance Agreement also required him to provide a balance sheet with detailed property descriptions and specific ownership information.  (Mot. Summ. J. Supplemental App. Ex A-12 (App. 65).)  This requirement seems to have arisen from the mis-communication between Gibson and Plaintiff regarding the true nature and extent of Gibson's personal holdings.[3] In light of the repeated requests for a clarification of Gibson's holdings, and the text of the Forbearance Agreement itself, the Court cannot agree that Gibson was only obligated to provide new financial statements to Plaintiff if any existed.  Plaintiff had repeatedly requested that Gibson clarify his holdings, and then, in the Forbearance Agreement, Gibson agreed to do so as consideration for Plaintiff not filing suit.

Therefore, Gibson's failure to clarify his holdings is a breach of the Forbearance Agreement. In that agreement, executed on or around September 8, 2008, Mobicom and Gibson had admitted their defaults under the Note and the Guarantee  As NLM did not bring this action

---

[3]In an email dated August 26, 2008, Chappel communicates to Gibson that he would like to go through Gibsons's balance sheet line by line in light of the finding out that at least one of the major assets that Gibson had listed in his portfolio was actually held in some kind of trust. (Mot. Summ. J. Supplemental App. Ex A-14 (App. 68).)  Chappel, in a second email dated August 28, 2008, provides Gibson's last financial statement and asks Gibson to: 1) update it; 2) provide additional ownership information on anything that is not owned entirely by Gibson personally; and 3) give more detailed descriptions of the properties themselves.  (Mot. Summ. J. Supplemental App. Ex A-10 (App. 57).)

until November 13, 2008, this Court also finds that NLM tendered performance, and is not in default, under the Forbearance Agreement.

### D.     Defendants' Defense on the Note and the Guaranty Claims

Defendants argue that NLM's breach of contract claims fail as a matter of law. Defendants first assert that NLM failed to satisfy all conditions precedent and did not strictly comply with all material terms of the Note, and that therefore Mobicom cannot be in breach of that agreement.  (Defs.' Br. Supp. Resp. Mot. Summ. J. (p. 8).)  Defendants also assert that the Guaranty was not a valid contract as it did not state when amounts arising under that agreement would be due and payable.  (*Id*.)

However, under Texas law, one may waive a contractual right.  *Johnson v. Structured Asset Servs., LLC*, 148 S.W.3d 711, 722 (Tex. App.–Dallas 2004, no pet.).  "Waiver is defined as an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right."  *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) (quoting *Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987) (internal quotations omitted)).

In the Forbearance Agreement, Defendants Mobicom and Gibson acknowledge that they are in default under the terms of the Note and the Guaranty, respectively.  (Mot. Summ. J. Supplemental App. Ex A-12 (p. 64).)  These acknowledgments are inconsistent with 1) an intention by Mobicom to rely on the  alleged failure by NLM to comply with the terms of the Note as a defense against Mobicom's own breach of that Note, and 2) an intention by Gibson to rely on the assertion that the Guaranty was not a valid contract.  *United States Fidelity and Guaranty Co. v. Bimco Iron and Metal Corp.,* 464 S.W.2d 353, 357 (Tex. 1971) (explaining that

an admission of liability is inconsistent with an intention to rely on a defense).  Accordingly, this

Court finds that NLM has proven Mobicom's default under the Note as well as Gibson's default

under the Guaranty.  The Court, however, limits its findings to the breach of contract claims and

does not render judgment on Plaintiff's claim of fraud.


IV.     **Conclusion**

For the foregoing reasons, the Court GRANTS Plaintiff's Motion for Summary

Judgment.  Plaintiff's Motion for Leave is GRANTED.  Defendants' Motion to Strike is

DENIED as MOOT.  Plaintiff's Motion to Strike is DENIED as MOOT.

**IT IS SO ORDERED.**

Signed September 22, 2009.


_____
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE